UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA        :      Crim. No. 09-932 (JLL)

          v.                    :

ANTHONY R. SUAREZ and           :      Hon. Jose L. Linares
VINCENT TABBACHINO

_____

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS' PRETRIAL MOTIONS

_____


                                PAUL J. FISHMAN
                                United States Attorney
                                970 Broad Street
                                Suite 700
                                Newark, New Jersey 07102
                                (973) 645-2700

On the Brief:
Mark J. McCarren
Assistant United States Attorney

## TABLE OF CONTENTS

Page

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . 1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . 3

Point 1: DEFENDANT TABBACHINO'S REQUESTS REGARDING HIS POLYGRAPH
         EXAMINATION SHOULD BE DENIED . . . . . . . . . . . . 3

Point 2: DEFENDANTS' MOTION TO SEVER THE INDICTMENT SHOULD
         BE DENIED . . . . . . . . . . . . . . . . . . . 16

Point 3: DEFENDANT SUAREZ'S MOTION TO STRIKE SURPLUSAGE IN
         THE INDICTMENT SHOULD BE DENIED . . . . . . . . . . 26

Point 4: THE COURT SHOULD DENY DEFENDANT SUAREZ'S MOTION FOR
         RULE 16, *BRADY* AND EARLY *GIGLIO* MATERIAL . . . . . . 31

Point 5: THE GOVERNMENT DOES NOT OBJECT TO DEFENDANT SUAREZ'S
         MOTION SEEKING TO PRESERVE THE ABILITY TO REQUEST A
         *STARKS* HEARING AT A LATER DATE . . . . . . . . . . 35

Point 6: THE DEFENDANTS SHOULD BE ORDERED TO PROVIDE RECIPROCAL
         DISCOVERY TO THE UNITED STATES . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Adams*,
   759 F.2d 1099 (3d Cir.), cert. denied, 474 U.S. 906, 971 (1985) . . . . . . . . . . . . . . . . . . . .   19

*United States v. Alsugair*,
   256 F. Supp. 2d 306 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*United States v. Anderson*,
   579 F.2d 455 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*United States v. Archer*,
   455 F.2d 193 (10th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*United States v. Barnard*,
   490 F.2d 907  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*United States v. Benavidez-Benavidez*,
   217 F.3d 720 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*United States v. Borish*,
   452 F. Supp. 518 (E.D.Pa. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*United States v. Bortnick*,
   2004 WL 2861868 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

   *Brady v. Maryland*,
      373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 31, 32

   *United States v. Brown*,
      2008 WL 5377755 (D.N.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

      *United States v. Bullock*,
         451 F.2d 884 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*United States v. Bump*,
   605 F.2d 548 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

*United States v. Caldwell*,
   560 F.3d 1214 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*United States v. Call*,
   129 F.3d 1402 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*United States v. Canter*,
 338 F. Supp. 2d 460 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*United States v. Caruso*,
 948 F. Supp. at 392 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Conti v. Commissioner*,
 39 F.3d 658 (6th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Cordoba*,
 104 F.3d 225, (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Crumby*,
 895 F. Supp. 1354 (D.Ariz. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*United States v. Dansker*,
 537 F.2d 40 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977) . . . . . . . . . . . . . . . . . . . .  19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5, 6, 9, 10

*United States v. De Larosa*,
 450 F.2d 1057 (3d Cir. 1971), cert. denied, 405 U.S. 957 (1972) . . . . . . . . . . . . . . . . . . .  19

*United States v. Dickens*,
 695 F.2d 765 (3d Cir. 1982), cert. denied, 460 U.S. 1092 (1983) . . . . . . . . . . . . . . . . . . .  18

*United States v. Eiland*,
 406 F. Supp. 2d 46 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*United States v. Eisenberg*,
 773 F. Supp. 662 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 33, 34

*United States v. Eufrasio*,
 935 F.2d 553 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*United States v. Frumento*,
 405 F. Supp. 23 (E.D. Pa. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*United States v. Galbreth*,
 908 F. Supp. 877 (D.N.M. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*United States v. Gantley*,
 172 F.3d 422 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 10, 13

*United States v. Giampa*,
 904 F. Supp. 235 (D.N.J. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*Giglio v. United States*,
    405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 31, 32, 33, 34

*Greer v. Miller*,
    483 U.S. 756 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States  v. Hedgepath*,
    434 F.3d 609 (3d Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 28, 29, 30

*United States v. Hersh*,
    297 F.3d 1233 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Higgs*,
    713 F.2d 39 (3d Cir. 1983), cert. denied, 464 U.S.  1048 (1984)  . . . . . . . . . . . . . 31, 32, 33

*United States v. Hill*,
    799 F. Supp. 86 (D.Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Huppert*,
    917 F.2d 507 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Irizarry*,
    341 F.3d 273 (3d Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Johnson*,
    820 F.2d 1065 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Kennard*,
    472 F.3d 851 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Lawson*,
    2009 WL 62145 (E.D.Ky) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Litman*,
    547 F. Supp. 645 (W.D. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Martino*,
    648 F.2d 367 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. McGlory*,
    968 F.2d 309 (3d Cir. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Nicely*,
    922 F.2d 850 (D.C.Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Oakar*,
    111 F.3d 146 (D.C.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*United States v. Pellulo*,
    399 F.3d 197 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*United States v. Pharis*,
    298 F.3d 228 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*United States v. Poore*,
    594 F.2d 39 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*United States v. Prince-Oyibo*,
    320 F.3d 494 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Provenzano*,
    688 F.2d 194 (3d Cir.), cert. denied, 459 U.S.  1071 (1982) . . . . . . . . . . . . . . . . . . . . . .  17

*United States v. Pursley*,
    577 F.3d 1204 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*United States v. Reicherter*,
    647 F.2d 397 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 19

*United States v. Rezaq*,
    134 F.3d 1121 (D.C.Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Richardson v. Marsh*,
    481 U.S. 200, 208 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Rinn*,
    586 F.2d 113 (9th Cir.  1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*United States v. Rittweger*,
    524 F.3d 171 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*United States v. Saldarriaga*,
    179 F.R.D. 140 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*United States v. Sanchez*,
    118 F.3d 192 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Scarpa*,
    913 F.2d 993 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*United States v. Scarborough*
    43 F.3d 1021 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schaeffer v. United States,*
    362 U.S. 511 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Scheffer,*
    523 U.S. 303 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 10

*United States v. Sherlin,*
    67 F.3d 1208 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Sherman,*
    426 F. Supp. 85 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Simmons,*
    679 F.2d 1042 (3d Cir. 1982), cert. denied, 462 U.S. 1134 (1983) . . . . . . . . . . . . . . . . . . . 19

*United States v. Somers,*
    496 F.2d 723 (3d Cir.), cert. denied, 419 U.S. 832 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Starks,*
    515 F.2d 112 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 35

*United States v. Starusko,*
    729 F.2d 256 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*United States v. Thomas,*
    167 F.3d 299 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Traeger,*
    289 F.3d 461 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Urban,*
    404 F.3d 754 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Vazquez,*
    319 F.2d 381 (3d Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Walton,*
    908 F.2d 1289 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Waters,*
    194 F.3d 926 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Wecker,*
    620 F. Supp. 1002 (D.Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Werner*,
   620 F.2d 922 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Wolfel v. Holbrook*,
   823 F.2d 970 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*United States v. Yeaman*,
   987 F. Supp. 373 (E.D.Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Zafiro v. United States*,
   506 U.S. 534 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## STATE CASES

*Lee v. Martinez*,
   96 P.3d 291 (N.M. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## FEDERAL STATUTES

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Fed.R.Crim.P. 7(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Fed.R.Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

## STATEMENT OF THE CASE

On or about July 23, 2009, defendants Anthony R. Suarez and Vincent Tabbachino were arrested pursuant to a federal criminal complaint charging them with conspiring to obstruct, delay, and affect interstate commerce by extortion under color of official right, by accepting and agreeing to accept corrupt payments that were paid and to be paid by another, with that person's consent, in exchange for defendant Suarez's future official assistance in Ridgefield Government matters, in violation of Title 18, United States Code, Sections 1951(a) and 2.

In December of 2009, the Grand Jury sitting in Newark returned a seven count Indictment.  Count One charged both defendants with conspiracy to extort under color of official right in violation of Title 18, United States Code, Section 1951(a).  Count Two charged defendants with attempted extortion under color of official right in violation of Title 18, United States Code, Section 1951(a) and 2.  Count Three charged defendant Suarez with acceptance of a corrupt payment in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2, while Count Four charged defendant Tabbachino with offering a corrupt payment in violation of Title 18, United States Code, Sections 666(a)(2) and 2.  Counts Five through Seven charged defendant Tabbachino with money laundering between February and June of 2009 in violation of Title 18, United States Code, Section 1956(a)(3).

1

Defendants filed the instant motions seeking to admit and/or compel certain polygraph evidence, sever the indictment, strike surplusage from the indictment, compel immediate disclosure of all *Gigilo* material and to preserve the right to seek a *Starks* hearing at a later date.  For the reasons that follow, those motions should be denied.

## **ARGUMENT**

## **Point 1**

### DEFENDANT TABBACHINO'S REQUESTS REGARDING HIS POLYGRAPH EXAMINATION SHOULD BE DENIED

After having been charged in the criminal complaint on July 23, 2009, defendant Tabbachino sought out the services of a polygraph examiner without notice to, or the knowledge of, the Government.  After conducting a pre-test interview, during which Mr. Tabbachino purportedly represented that in or about mid-July 2009, he had returned the $10,000 in cash that he had received from the CW on or about May 18, 2009, the examiner related that he asked defendant Tabbachino three questions which, the examiner concluded, Mr. Tabbachino answered truthfully.  After having delivered the report to the Government, defendant then requested that the Government agree to conduct stipulated polygraph examinations of both defendant Tabbachino and the CW.  For a myriad of reasons - most notably, the general inadmissibility of polygraph results in federal court - the Government declined this offer.  Similarly, the Court should decline to order the Government to conduct a polygraph examination of the CW and bar any reference to the absence of a polygraph examination of the CW at trial.  In addition, the Court should deny defendant's motion to admit the results of defendant Tabbachino's polygraph examination at trial.

3

## A.  Polygraph Evidence is Generally Inadmissible

There is a strong presumption against the admission of
polygraph exam results at trial.  Prior to the United States
Supreme Court's decision in *Daubert v. Merrell Dow
Pharmaceuticals, Inc.*, 509 U.S. 579(1993), polygraph results had
been inadmissible in court.  After *Daubert*, some federal courts
have abandoned the *per se* rule excluding polygraph evidence,
although at least one circuit has maintained the *per se*
exclusion. *See United States v. Sanchez*, 118 F.3d 192, 197 (4th
Cir. 1997); *United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th
Cir. 2003).  For Circuits that have abandoned the *per se*
exclusion in light of *Daubert*, the admission of such evidence is
left to the discretion of the district courts.  However, that
discretion is usually exercised in favor of exclusion, at least
at the trial stage.

The reason for the de facto presumption for exclusion was
best summarized by the United States Supreme Court in *United
States v. Scheffer*, 523 U.S. 303 (1998), which upheld a *per se*
exclusion of polygraph evidence in military tribunals.  In
upholding the rule barring all polygraph evidence, the Court
noted that "[t]here is simply no consensus that polygraph
evidence is reliable.  To this day, the scientific community
remains extremely polarized about the reliability of polygraph
techniques." *Id.*, at 309.  The court further related that "[t]his
lack of scientific consensus is reflected in the disagreement

4

among state and federal courts concerning both the admissibility and the reliability of polygraph evidence." *Id.*, at 310-11.  The *Scheffer* Court then noted that the Fourth Circuit and most states maintained the *per se* exclusionary rule while others, including the Fifth and Ninth Circuits had abandoned the *per se* exclusion post-*Daubert*.  The *Scheffer* Court concluded that "[w]hatever their approach, state and federal courts continue to express doubt about whether such evidence is reliable."  *Id.*, at 312.

The *Scheffer* Court also expressed grave concern that the admission of polygraph evidence ran a significant risk of usurping the fact-finding role of the jury.  The Court laid out its concerns as follows:

> A fundamental premise of our criminal trial
> system is that "the *jury* is the lie detector."
> *United States v. Barnard*, 490 F.2d 907, 912
> (C.A.9 1973)(emphasis added), *cert. denied*,
> 416 U.S. 959 [] (1974). . . . By its very
> nature, polygraph evidence may diminish the
> jury's role in making credibility deter-
> minations. . . . Jurisdictions, in promulgating
> rules of evidence, may legitimately be con-
> cerned about the risk that juries will give
> excessive weight to the opinions of a poly-
> grapher, clothed as they are in scientific
> expertise and at times offering, as in
> respondent's case, a conclusion about the
> ultimate issue in the trial.  Such juris-
> dictions may legitimately determine that the
> aura of infallibility attending polygraph
> evidence can lead jurors to abandon their
> duty to assess credibility and guilt.  Those
> jurisdictions may also take into account the
> fact that a judge cannot determine, when ruling
> on a motion to admit polygraph evidence,
> whether a particular polygraph expert is
> likely to influence the jury unduly.

5

*Id.*, at 313-14.   Federal courts, especially since the *Scheffer*
decision, have been reluctant to admit polygraph evidence at
trial.   For instance, the Sixth Circuit has expressed strong
reservations about the admission of polygraph evidence:

> This court has never adopted a *per se* pro-
> hibition on the introduction of polygraph
> evidence. [citations omitted].   We do,
> however, generally disfavor admitting
> results of polygraph examinations. [cita-
> tions omitted].   In one post-*Daubert* decision,
> we again expressed our long-held opinion that
> the results of a polygraph are inherently
> unreliable. *See United States v. Scarborough*,
> 43 F.3d 1021, 1026 (6ᵗʰ Cir. 1994).

*United States v. Thomas*, 167 F.3d 299, 308 (6ᵗʰ Cir. 1999).   *See*
*also United States v. Waters*, 194 F.3d 926, 930 (8ᵗʰ Cir. 1999)
(affirming district court's refusal to admit polygraph evidence
under Fed.R.Evid. 403 due to concern that it would cause
confusion and citing *Scheffer* Court's concern that juries would
unduly weigh evidence from a polygrapher); *United States v. Call*,
129 F.3d 1402, 1405-06 (10ᵗʰ Cir. 1997)(affirming district
court's refusal to conduct a *Daubert* hearing and finding that
"'nothing in *Daubert* would disturb the settled precedent that
polygraph evidence is neither reliable nor admissible to show
that one is truthful.'")  Similarly, the Ninth Circuit, while
recognizing that *Daubert* had led to the abandonment of the *per se*
exclusion within that circuit, noted that "[h]owever, we
expressed no 'new enthusiasm for admission of unstipulated
polygraph evidence' . . . noting its 'grave potential for

interfering with the deliberative process.'" *United States v. Benavidez-Benavidez*, 217 F.3d 720, 724 (9th Cir. 2000)(quoting *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997)). Accordingly, the *Benavidez-Benavidez* Court affirmed the refusal of the district court to admit the polygraph evidence under both Federal Rule of Evidence 702 and 403 grounds.

### B. The Results of Defendant Tabbachino's Polygraph Exam Should Be Excluded from Evidence at Trial.

In light of the overwhelming authority disfavoring the admission of polygraph evidence, defendant Tabbachino faces a nearly insurmountable hurdle in his attempt to admit the results of his exam.  This is true for a variety of reasons.  First, the fact that there is no stipulation between the parties as to the admissibility of the polygraph results makes its admission highly suspect.  For instance, in *United States v. Sherlin*, 67 F.3d 1208 (6th Cir. 1995), the Sixth Circuit upheld the district court's exclusion of unilaterally obtained polygraph evidence in the following terms:

> As a general rule, the results of a polygraph examination are inadmissible. [citations omitted]. Indeed, this circuit has recently stated "that unilaterally obtained polygraph evidence is almost never admissible under Evidence Rule 403." *Conti v. Commissioner*, 39 F.3d 658 (6th Cir. 1994) . . . The Sixth Circuit has consistently recognized that in the absence of a prior agreement between the parties that the results of an examination would be admissible, the probative value of the polygraph is substantially less because the defendant would have no adverse interest at stake in the polygraph. [citations omitted].  Thus, Sherlin's privately-

> commissioned polygraph test, which was unknown
> to the government until after its completion,
> is of extremely dubious probative value.

*See also United States v. Gantley*, 172 F.3d 422, 430, n. 7 (6th Cir. 1999)(affirming that "'there was no agreement or stipulation between the parties that the results of the examination, whatever they might reflect, would be admissible in subsequent litigation and hence, [Gantley] had no adverse interest at stake to cloak his willingness with credibility.'" (quoting *Wolfel v. Holbrook*, 823 F.2d 970, 974 (6th Cir. 1987)).  Thus, in the instant case, defendant Tabbachino had little to lose in obtaining a polygraph exam without the Government's knowledge because there was virtually no chance that an adverse finding by the polygrapher would be placed in front of the jury, even assuming the Government became aware of that result.

Second, defendant has provided little information about the polygraph that was administered including the type of test administered, any literature supporting the accuracy of the type of testing employed, or the actual test results.  Indeed, it appears that the polygrapher asked but three questions of defendant Tabbachino, only one of which appears to be directly relevant to the facts at issue in Counts One through Four of the Indictment.  As a result, numerous areas of directly relevant inquiry were not covered in the test.  In short, it is virtually impossible to conceive of how these results could be deemed reliable or even substantially probative under the circumstances.

8

In many respects, defendant Tabbachino's request mirrors the request for the admission of polygraph results that was denied by the district court in *United States v. Canter*, 338 F.Supp.2d 460 (S.D.N.Y. 2004), wherein one defendant named Zambouros sought the admission of unilaterally obtained polygraph evidence at trial. As with defendant Tabbachino, "Zambouros never informed the Government of his intention to submit to the examination, and informed the Government of the examination only after receiving the results." *Id.*, at 462-463. In seeking the admission of this evidence, Zambouros relied upon *United States v. Crumby*, 895 F.Supp. 1354 (D.Ariz. 1995) and *United States v. Galbreth*, 908 F.Supp. 877 (D.N.M. 1995), much as does defendant Tabbachino. *338 F.Supp.2d* at 463. In denying Zambouros's request, the *Canter* Court made the following observations:

> The Court finds Zambouros's arguments unper-
> suasive. While the Second Circuit has reserved
> deciding whether polygraph technology is suffi-
> ciently reliable to be admissible under Rule
> 702 in light of *Daubert*, [citation omitted],
> both the Second Circuit and its district courts
> have consistently expressed serious doubt as
> to the reliability of such evidence, even after
> *Daubert*. [citations omitted].

*Canter*, at 463. The *Canter* Court then noted that the United States Supreme Court decided *Scheffer* five years after its *Daubert* ruling, and found that even though *Scheffer* involved a military rule of evidence, "the *Scheffer* Court's rationale and discussion of the reliability of polygraph evidence [is] no less germane or compelling." *Id.*, at 464. The *Canter* Court concluded

9

that "[f]or this reason, Zambouros's arguments relying on *Crumby* and *Galbreth*, both pre-*Scheffer* decisions not binding upon this Court, are unpersuasive.   Indeed, Zambouros does not cite any post-*Scheffer* federal court ruling that has admitted polygraph evidence."   Much like defendant Zambourous, defendant Tabbachino cites but one federal court decision allowing the admission of polygraph evidence - the *Crumby* decision - and fails to cite any federal cases post-*Scheffer* admitting polygraph evidence at trial.[1]

As did the Sixth Circuit in *Sherlin* and *Gantley*, the *Canter* Court was similarly critical of the unilateral means by which the polygraph was obtained.

> As discussed above, Zambouros never notified the Government of the polygraph examination, and thus, it could not witness the examination and ensure the integrity of the procedure. Moreover, with the Government unaware of the examination at the time it was performed, Zambouros essentially had nothing to lose-- had he failed the examination, it is highly improbable that he would have revealed that result to the Government.   Under these circumstances, the reliability of Zambouros's polygraph examination is suspect, and as such, the testimony of the polygraph examiner is inadmis-

---

[1] Defendant Tabbachino does cite the 2004 decision of the New Mexico state court in *Lee v. Martinez*, 96 P.3d. 291 (N.M. 2004), allowing admission of polygraph evidence pursuant to the state rule adopting *per se* admissibility of polygraph evidence. Obviously, this is not binding on any federal court, and it is noteworthy that the *Scheffer* Court stated that "[m]ost States maintain *per se* rules excluding polygraph evidence. [citations omitted] New Mexico is unique in making polygraph evidence generally admissible without the prior stipulation of the parties and without significant restriction." 523 U.S. at 1266.

> sible as a matter of law. *See United States v.*
> *Saldarriaga*, 179 F.R.D. 140, 140 (S.D.N.Y. 1998)
> (holding that evidence of a polygraph examination
> is inadmissible where the Government was not
> notified of the examination).

*Id.*, at 464.  Accordingly, the Court should exclude the results of defendant Tabbachino's polygraph examination and any reference thereto at trial.

**C.    Defendant Tabbachino's Request to Compel the CW to Submit to a Polygraph Examination or to Cross-Examine the CW about the Absence of Such a Test Should be Denied.**

Despite the overwhelming case law aligned against the admissibility of polygraph evidence, defendant Tabbachino does not limit his requests to the mere admission at trial of his unilaterally obtained polygraph examination.  Indeed, defendant makes the seemingly unprecedented request that this Court order the Government to administer a polygraph examination to the CW. As an apparent fall back position - perhaps recognizing the truly extraordinary nature of his initial request - defendant Tabbachino requests that he be allowed to cross-examine the CW about whether the CW was subjected to a polygraph exam by the Government.  Both requests are baseless.

As to defendant's request that the Court compel the CW to submit to a polygraph examination, it is hardly surprising that he fails to cite a case that is even remotely on point.  Simply put, there is no authority for the proposition that a court can mandate that a defendant or witness submit to a polygraph

11

examination, except perhaps in the context of a defendant subjected to such tests as part of the conditions of supervised release or probation.  It would be remarkable, to say the least, for a court to mandate such an examination when the results produced would be almost certainly inadmissible at trial. Defendant's reliance on cases supporting the general proposition that the Government should not elicit false testimony at trial or that it is in possession of credible exculpatory evidence is simply misplaced.  Rather, defendant Tabbachino is presumably hoping that the Government will produce evidence that might impeach its own witness, but the only "evidence" in the Government's possession is the unilaterally obtained, self-serving polygraph examination provided to it by defendant Tabbachino.

Similarly, defendant's request that he should be allowed to cross-examine the CW about whether the CW was or was not subjected to a polygraph examination should be denied.  Indeed, given that he likely would be barred from cross-examining the witness about the results of a polygraph examination that was actually administered, it is hard to fathom why he should be entitled to cross-examine the witness about the absence of such a test being undertaken.  *Cf. United States v. Walton*, 908 F.2d 1289, 1293-94 (6th Cir. 1990)(discussing the need for curative instructions when the fact of a polygraph examination being taken is inadvertently mentioned before the jury); *Gantley*, 172 F.3d at

12

430-432 (discussing whether mistrial or curative instruction was warranted where defendant improperly testified about the polygraph examination he had taken).  Clearly, in seeking to cross-examine the CW in such a manner, defendant Tabbachino would be seeking to suggest to the jury that the Government had failed to administer the examination for some sinister or improper reason.  Such an effort would be highly prejudicial and misleading to the jury given that the jury would not be allowed to hear about the results of such an examination even if it had been administered.  Defendant's suggestion that "[i]t may very well be that the United States has engaged in a pattern of conduct clearly intended to avoid a search for the truth," Defendant's Brief, at 10, is specious on its face given that defendant chose not to inform the Government that he would seek a polygraph examination and given that defendant should know that polygraph evidence is inadmissible at trial.

### D. Defendant's Requests for Additional Information Regarding the CW's Activities on July 13th and 14th Should Be Denied

In seeking to develop his theory of the defense, namely, that he returned the $10,000 cash payment received from the CW on May 18, 2009, defendant submits a series of "motions for discovery" that he asserts will produce evidence that "could also tend to corroborate his version of the events at trial and, thus, result in a verdict worthy of confidence, whatever the result may

13

be." Defendant's Brief, at 11.  Specifically, defendant

Tabbachino enumerates these requests as follows:

> 4. Directing the Government to provide to defense
>    counsel the date (in July 2009) that the CW
>    underwent surgery on his colon.
>
> 5. Directing the Government to disclose to
>    defense counsel whether or not it had the
>    CW under visual surveillance on July 13[th]
>    and July 14[th], 2009, and to provide any
>    and all reports regarding such surveillance.
>
> 6. Directing the Government to provide to defense
>    counsel of any audio and/or video tapes and/or
>    reports describing or evidencing the where-
>    abouts and activities of the CW on July 13[th]
>    or July 14[th], 2009.
>
> 7. Directing the Government to provide information
>    as to whether or not its agents searched the
>    CW (or his vehicle) prior to and subsequent
>    to the CW going about his business on behalf
>    of the Government on July 13[th] or July 14[th],
>    2009, and the results of such searches.

Defendant's Notice of Pre-Trial Motions, at 2.  Defendant

concedes that the Government has already informed him that the CW

underwent the medical procedure in question on July 14, 2009,

thus mooting request number 4.  As for the additional

information, the Government is bound by the requirement of *Brady*

*v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405

U.S. 150 (1972), to provide exculpatory information to the

defendant.  As to *Brady* material, the Government is aware of its

obligation to turn over such material as soon as it comes into

its possession.  To date, the only material that might even

arguably be termed *Brady* material regarding defendant Tabbachino

14

is the polygraph report that defendant provided to the Government.[2]  The Government is not in possession of any tape, report, video or other information that would tend to corroborate defendant's claim that the CW was provided with the $10,000 in cash by defendant Tabbachino on or about July 13, 2009, or on any date for that matter.  Indeed, the Government has no evidence that the CW met with defendant Tabbachino within a week before or after July 13, 2009.  Should the Government come into any *Brady* material, it will be immediately provided to defendant. Accordingly, defendant's additional motions for discovery should be denied.

---

[2] As a result, the Government provided a copy of this report to defendant Suarez in case defendant Tabbachino had not already done so.

**Point 2**

DEFENDANTS' MOTION TO SEVER
THE INDICTMENT SHOULD BE DENIED

Defendant Suarez and defendant Tabbachino seek severance of the Indictment for differing reasons.  Defendant Suarez, who is charged along with defendant Tabbachino in Count One with conspiracy to commit extortion under color of official right in violation of 18 U.S.C. § 1951, seeks severance of his case from that of defendant Tabbachino.  Defendant Tabbachino seeks severance of the corruption counts (Counts One through Four) from the money laundering counts (Counts Five through Seven), but does not seek severance of the case from defendant Suarez.  Defendant Suarez's request should be denied as defendants Suarez and Tabbachino are properly joined as coconspirators and the evidence against each overlaps in large degree.  Defendant Tabbachino's motion to sever the corruption counts from the money laundering counts should likewise be denied as the jury should have little difficulty compartmentalizing the evidence against defendant Tabbachino pertaining to the corruption counts and the money laundering counts.

**A. Defendant Suarez's Motion to Sever His Case from that of His Codefendant is Without Merit**

Rule 8(b) permits the joinder of defendants in the same indictment if they are alleged to have participated in the same

16

act or transaction or series of acts or transactions constituting

an offense.  Specifically, Rule 8(b) provides as follows:

> (b) **Joinder of Defendants.**  The indictment or informa-
> tion may charge 2 or more defendants if they are
> alleged to have participated in the same act, or
> transaction, or in the same series of acts of
> transactions, constituting an offense or offenses.
> The defendants may be charged in one or more
> counts together or separately.  All defendants
> need not be charged in each count.

As a preliminary matter, it should be noted that the Supreme

Court has stated that "[t]here is a preference for joint trials

of defendants who are indicted together." *Zafiro v. United*

*States*, 506 U.S. 534, 537 (1993).  If the pleadings allege

participation in the same act or series of acts, this is

sufficient to justify joinder, even if the count of the

indictment alleging this participation is ultimately dismissed.

*Schaeffer v. United States*, 362 U.S. 511, 514 (1960).  The Court

of Appeals for the Third Circuit has found that since a

conspiracy claim "provides a common link, and demonstrates the

existence of a common scheme or plan," it satisfies the "series

of acts" requirement. *United States v. Somers*, 496 F.2d 723, 729

(3d Cir.), *cert. denied*, 419 U.S. 832 (1974).  Relatedly, the

Third Circuit has expressed a clear preference in conspiracy

cases "to have all of the parties tried together so that the full

extent of the conspiracy may be developed." *United States v.*

*Provenzano*, 688 F.2d 194, 199 (3d Cir.), *cert. denied*, 459 U.S.

1071 (1982); *accord United States v. Dickens*, 695 F.2d 765, 773 (3d Cir. 1982), *cert. denied*, 460 U.S. 1092 (1983); *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009)("we recognize a presumption in a conspiracy trial that coconspirators charged together preferably should be tried together"); *United States v. Rittweger*, 524 F.3d 171, 178 (8th Cir. 2008)(quoting *United States v. Marzano*, 160 F.3d 399 (7th Cir. 1998) for the proposition that the "simplest case for joinder is where the defendants are charged with having conspired with each other"); *United States v. Eiland*, 406 F.Supp.2d 46, 50 (D.D.C. 2005)("[j]oinder is preferred in conspiracy cases").  In such cases, the important interest in judicial economy usually weighs in favor of trying the defendants in a single trial. *Dickens*, 695 F.2d at 779.

Under Rule 14 of the Federal Rules of Criminal Procedure, however, the court has the discretion to grant a severance of a defendant if it appears that the defendant or government will be prejudiced by a joint trial.  Neither mere allegations of prejudice nor the assertion that a severance would improve a defendant's chance for acquittal justifies a severance. *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). Similarly, a defendant is not entitled to severance merely on the basis of a disparity in the strength of the evidence against a co-defendant, since "if that were the case, a joint trial could rarely be held." *United States v. Dansker*, 537 F.2d 40, 62 (3d

18

Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). *See also*, *United States v. Adams*, 759 F.2d 1099, 1113 (3d Cir.), *cert. denied*, 474 U.S. 906, 971 (1985); *United States v. Simmons*, 679 F.2d 1042 (3d Cir. 1982), *cert. denied*, 462 U.S. 1134 (1983). Defendant Suarez concedes as much when he states that "Mr. Suarez's request is not based on the fact that the proofs are stronger to Mr. Tabbachino." <u>Defendant Suarez's Brief</u>, at 14.

Instead, a defendant must show that the evidence is so complex or confusing that a jury could not compartmentalize the evidence and consider it for its proper purposes, *Dansker*, 537 F.2d at 62; *United States v. De Larosa*, 450 F.2d 1057 (3d Cir. 1971), *cert. denied*, 405 U.S. 957 (1972), and that the failure to sever clearly and substantially prejudices him to the point of depriving the defendant of a fair trial. *Reicherter*, 647 F.2d at 400; *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009)("Rule 14(a)'s prejudice standard requires a showing of actual prejudice . . .").

In the instant matter, the conduct of defendant Suarez and Tabbachino are inextricably intertwined as pertains to the corruption counts. Count One alleges that the defendants conspired with one another. Were the court to sever the defendants, the two resulting trials would be virtually identical in terms of the evidence that the Government would adduce as proof of the alleged corrupt agreement and the actions taken to advance the corrupt scheme. Thus, joinder of the defendants is

19

clearly proper.  Notably, defendant Suarez does not premise his request for severance on the basis that defendants Suarez and Tabbachino are improperly joined as defendants on the corruption counts.  Nor does he claim that the evidence that will be adduced as to the corruption counts relating to defendant Tabbachino's culpability will have a prejudicial effect on him.  Rather, defendant Suarez bases his entire argument for severance of the defendants on the alleged prejudicial spillover effect on him from the evidence of money laundering that will be adduced as to defendant Tabbachino.  Putting aside the merits of this argument, the logic that flows from this argument would counsel for the severance of the money laundering counts rather than a severance of the defendants.[3]  Moreover, a jury should have little difficulty compartmentalizing the evidence against one defendant from that of the other. *See United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)(joinder favored where jury can appropriately compartmentalize the evidence in a case so as to consider the evidence only as it relates to the relevant defendant).  Indeed, there will be little question that defendant Suarez had no involvement in the money laundering conduct, thus minimizing any prejudicial spillover.  The Indictment makes clear on its face that defendant Suarez is not charged in Counts Five

---

[3] This may explain why defendant Suarez argues, as an apparent fall-back position, that "[a]t a minimum, it is respectfully requested that the Court sever the money laundering counts from the case." Defendant Suarez's Brief, at 15.

through Seven, and the Court undoubtedly will give a cautionary instruction to the jury informing them that the jury should consider the evidence as to each count and each defendant separately.  Courts have held repeatedly that this is sufficient to cure any potential "spillover" from one defendant to another. *See United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005)(holding that jury could segregate evidence against defendant from evidence against co-defendants in light of chart that showed which defendants were involved in which specific conduct and cautionary instruction given by court); *United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006)("a court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt").

### B. Defendant Tabbachino's Motion to Sever the Corruption Counts from the Money Laundering Counts Should be Denied.

Defendant Tabbachino moves for severance of the corruption counts from the money laundering counts.  While this request represents a closer call than does the request for a severance of the defendants, it should also be denied.

Rule 8(a) of the Federal Rules of Criminal Procedure dictates the proper joinder of offenses in an Indictment and states as follows:

> (a) **Joinder of Offenses.**  The indictment or informa-
> tion may charge a defendant in separate counts with
> 2 or more offenses if the offenses charged – whether
> felonies or misdemeanors or both – are of the same
> or similar character, or are based on the same act
> or transactions, or are connected with or constitute

21

parts of a common scheme or plan.

Rule 8 of the Federal Rules of Criminal Procedure governs joinder of both defendants and offenses, but the standards for joinder are different.  As recently noted by the Third Circuit, "[t]he difference between the standards is significant," with Rule 8(a) being "more permissive that Rule 8(b) because Rule 8(a) allows joinder on an additional ground, i.e., when the offenses "are of the same or similar character." *United States v. Irizarry*, 341 F.3d 273, 287, n.4 (3d Cir. 2003). *See also United States v. Eufrasio*, 935 F.2d 553, 570, n.20 (3d Cir. 1991)(noting that while both Rule 8(a) and (b) permit joinder "when a transactional nexus exists between the offenses or defendants . . . [o]nly Rule 8(a), however, permits joinder on an additional theory, that is when offenses "are of the same of similar character.") Similarly, the Eleventh Circuit rejected a defendant's contention that joinder of charges in a case before it was improper because the charges were "distinct in subject and in time, and [] there was no evidentiary overlap between them." *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002).  The *Hersh* Court opined that the defendant's "reading of Rule 8(a), however, is far too narrow.  Rule 8(a) is construed broadly in favor of initial joinder, allowing joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions." Id.

The *Hersh* Court further clarified that "Rule 8(a) is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *Id.* (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980); *United States v. Nicely*, 922 F.2d 850, 853 (D.C.Cir. 1991)("[t]here must be a logical relationship between the acts or transactions within the series.")

In the instant case, it is true that the crimes alleged against defendant Tabbachino represent two distinct alleged courses of criminal conduct, but the two are intertwined in several respects. First, many of the conversations with defendant Tabbachino include references to both ongoing courses of criminal conduct. Second, the relationship between the CW and defendant Tabbachino cannot be properly understood without evidence of both criminal activities. Moreover, defendant Suarez inadvertently undermines defendant Tabbachino's severance argument by pointing out that "the government will most likely try to introduce evidence of the money laundering counts as to Mr. Tabbachino in the corrupt payment case (ostensibly for reasons such as knowledge, intent, and the like)." Defendant Suarez's Brief, at 15. To the extent that defendant Tabbachino's defense implies or insinuates that defendant Tabbachino did not fully understand that the CW sought to corruptly influence defendant Suarez, the evidence of his money laundering activities

23

with the CW would be, at the very least, proper Rule 404(b) evidence. *See e.g., United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987)("[i]f all the evidence of the separate count would be admissible upon severance, prejudice is not heightened by joinder."); *United States v. Traeger*, 289 F.3d 461, 473 (7th Cir. 2002)(whether or not evidence of each of the joined counts would be admissible at separate trials is an important factor in determining whether a defendant is prejudiced by the joinder of similar offenses."). Moreover, should defendant Tabbachino choose to testify on his own behalf at trial, the Government would seek to appropriately cross-examine him concerning his money laundering activities with the CW. Thus, despite the seeming lack of surface connection between the corruption and money laundering counts, the activities are intertwined, and the evidence of the money laundering activities is likely to be admissible as Rule 404(b) material or through cross-examination. Moreover, the Court will undoubtedly instruct the jury that each count is to be considered separately and apart from every other count. "Speculation that the jury will not follow the instructions of the Court with respect to compartmentalizing the evidence does not justify a severance under Rule 14." *United States v. Borish*, 452 F. Supp. 518, 524 (E.D.Pa. 1978). Indeed, it is presumed that the jury will follow instructions "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong

24

likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)(quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). In this regard, absent any showing by the moving defendant of substantial prejudice, a limiting instruction to the jury to consider each count separately obviates the need for severance. Thus, joinder of these counts is proper.

**Point 3**

DEFENDANT SUAREZ'S MOTION TO STRIKE SURPLUSAGE IN
THE INDICTMENT SHOULD BE DENIED

Defendant Suarez contends that the Indictment returned against him contains surplusage which should be struck. Specifically, defendant contends that the portions of the Indictment which set forth details of the conversations between defendant Suarez, defendant Tabbachino and the CW should be stricken and replaced with, presumably, brief summaries of those meetings containing no quotations.  Because defendant Suarez cannot show that the language in the Indictment to which he objects is both irrelevant and prejudicial, this motion should be denied.

As a preliminary matter, it should be noted that "motions to strike surplusage are rarely granted." *United States v. Alsugair*, 256 F.Supp.2d 306, 317 (D.N.J. 2003); *United States v. Eisenberg*, 773 F.Supp. 662, 700 (D.N.J. 1996)("It is an exacting standard which is met only in rare circumstances"); *United States v. Bortnick*, 2004 WL 2861868; *3 (E.D.Pa); *United States v. Brown*, 2008 WL 5377755 (D.N.J.); 1 Charles A. Wright & Arthur Miller, Federal Practice and Procedure 127 (2d Ed. 1982)("only rarely has surplusage been stricken").  This rarity is due in large part to the standard that has been adopted in the Third Circuit as well as most other circuits.  In *United States*

26

*v. Hedgepath*, 434 F.3d 609, 612 (3d Cir. 2006), the Third Circuit

adopted the following rule:

> We hold that, upon the defendant's timely
> motion, the court may strike surplusage from
> the indictment or information when it is both
> irrelevant (or immaterial) and prejudicial.
> Logic demands the conjunctive standard: infor-
> mation that is prejudicial, yet relevant to
> the indictment, must be included for any
> future conviction to stand up and information
> that is irrelevant need not be struck if there
> is no evidence that the defendant was prejudiced
> by its inclusion.

The *Hedgepath* Court noted that this test was in keeping with the

Advisory Committee's Note to Fed.R.Crim.P. 7(d) as well as the

decisions of other Circuit courts. *See, e.g., United States v.

Rezaq*, 134 F.3d 1121, 1134 (D.C.Cir. 1998); *United States v.

Oakar*, 111 F.3d 146, 157 (D.C.Cir. 1997); *United States v.

Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *United States v.

Poore*, 594 F.2d 39, 41 (4th Cir. 1979); *United States v.

Anderson*, 579 F.2d 455, 457, n.2 (8th Cir. 1978); *United States

v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971); *United States v.

Huppert*, 917 F.2d 507, 511 (11th Cir. 1990).  As a result, the

"scope of a district court's discretion to strike material from

an indictment is narrow." *United States v. Pharis*, 298 F.3d 228,

248 (3d Cir. 2002)(Cowen, J., dissenting)(quoting *Oakar*, 111 F.3d

at 157).

    "Language is properly included in an indictment if it

pertains to matters which the government will prove at trial.

These matters need not be essential elements of the offense if they are 'in a general sense relevant to the overall scheme charged.'" *United States v. Yeaman*, 987 F.Supp. 373, 376-77 (E.D.Pa. 1997) (citing *United States v. Wecker*, 620 F.Supp. 1002, 1006 (D.Del. 1985)).  Thus, "language may remain in an indictment in cases where the language is relevant to the evidence that the government will present at trial." *Caruso*, 948 F.Supp. 382, 392 (D.N.J. 1996))(citing *Eisenberg*, 773 F.Supp. at 700). Furthermore, any information the "'government hopes properly to prove at trial . . . cannot be considered surplusage no matter how prejudicial it may be.'" *Yeaman*, 987 F.Supp. 373, 377 (citing *United States v. Hill*, 799 F.Supp. 86, 88-89 (D.Kan. 1992).

It is against this legal backdrop that defendant Suarez seeks to have the Court effectively order the rewriting of the Indictment.  Defendant astutely recognizes that the Government "will argue that the statements [in paragraph 7 of the Indictment] are not irrelevant and that, accordingly, under Hedgepath, the surplusage should not be stricken." Defendant Suarez's Brief, at 20.  Rather than contend that the statements are irrelevant - and defendant does not appear to make any such claim - defendant Suarez invokes language from a 1972 Tenth Circuit case and a 1963 Third Circuit case for the proposition that surplusage may be stricken so long as sufficient language remains to charge a crime.  To the extent either *United States v. Archer*, 455 F.2d 193, 194 (10th Cir. 1972) or *United States v.*

28

*Vazquez*, 319 F.2d 381, 384-85 (3d Cir. 1963) can be read to support this proposition, surely they are trumped by *Hedgepath*'s clear rule that surplusage may be stricken only "when it is both irrelevant (or immaterial) and prejudicial." *Id.*, at 612. Moreover, defendant's invocation of the Third Circuit Model Jury Charges regarding the "Theory of Defense" is simply inapposite as an indictment hardly constitutes a "judicial narrative" of the facts.  Rather, as defendant well knows, the jury will be instructed that the Indictment is merely a charging document and that no presumption of guilt should be attached to it.

Defendant also relies heavily upon *United States v. Lawson*, 2009 WL 62145 (E.D.Ky), the unpublished decision from a district court in the Eastern District of Kentucky.  The usefulness of this case, whatever its precedential status, is murky at best.  First, the *Lawson* court did not undertake the *Hedgepath* analysis which would require both irrelevance and prejudice before excluding surplusage when analyzing the indictment which was before it.  Rather, it at least partially invoked two law review articles for the proposition that "any unnecessary language in a 'speaking' indictment might be used for an unnecessary or improper purpose.'" *Id.*, at *2.  Moreover, the analysis of the supposedly offending language is cursory at best. The *Lawson* Court opined that it "need not determine whether the edited quotes are actually misleading, because that [sic] they are irrelevant and serve no purpose in the indictment."  Given

that this sentence is the sole analysis provided by the *Lawson* Court - it does not even set forth the language in question or explain why it served no purpose in the indictment, it is impossible to determine why the court reached this conclusion. In short, there is little in the *Lawson* decision on which this Court could rely, and this court should draw no conclusions based upon the *Lawson* decision.

Defendant Suarez does not single out any phrases or specific language which he identifies as misleading or inflammatory.  Nor does he dispute that the language is accurately quoted. Furthermore, defendant Suarez essentially concedes that this language will be played to the jury and does not contest that it is critical to the Government's case.  Indeed, the language is part and parcel of the Government's proof and is indisputably relevant.  Moreover, defendant Suarez makes no effort to explain why it is prejudicial other than to suggest that "speaking indictments" such as the one at issue represent "advocacy piece[s] written for the benefit of the prosecution." <u>Defendant Suarez's Brief</u>, at 16.  Under *Hedgepath*, defendant Suarez must demonstrate that the language is irrelevant and prejudicial, and he has failed to do so.  Accordingly, the motion to strike surplusage should be denied.

**Point 4**

THE COURT SHOULD DENY DEFENDANT SUAREZ'S MOTION
FOR RULE 16, *BRADY* AND EARLY *GIGLIO* MATERIAL

Defendant Suarez seeks an order compelling the United States to immediately turn over material discoverable pursuant to Rule 16 as well as materials that would fall under the rubric of *Brady v. Maryland*, 373 U.S. 83 (1963), and information affecting a witness's credibility under *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  Specifically, defendant Suarez seeks information set forth in a nine-point list of materials that includes primarily *Giglio* material.  The Court should deny defendant Suarez's requests, primarily because they are either premature or are or will be moot.

**A. The United States has Satisfied its *Brady* Obligations and Will Continue to Do So**

The United States is aware of its obligation to disclose all exculpatory material under *Brady* and the Court's discovery order. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that the United States must turn over, at the earliest possible time, "evidence favorable to an accused . . . material either to guilt or to punishment."  Such exculpatory – that is, guilt negating – evidence goes to the heart of the defendant's guilt or innocence.  *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983), *cert. denied*, 464 U.S.

31

1048 (1984).  The government is not obligated under *Brady* to furnish a defendant with information he already has, or with any reasonable diligence, can obtain himself.  *United States v. Pellulo*, 399 F.3d 197, 202 (3d Cir. 2005); *Starusko*, 729 F.2d at 262.  The United States has already made available all the *Brady* material of which it is aware, specifically the report of the polygraph examination of defendant Tabbachino.  Accordingly, no order requiring the United States to meet its obligations is necessary.  Should the Government become aware of additional *Brady* material, such material will be immediately provided to defendants.  In addition, the Government has provided substantial materials pursuant to Rule 16, including numerous recordings, and defendant does not identify additional material that it claims that the Government has failed to provide pursuant to that rule, concentrating instead on the *Giglio* material he anticipates receiving.

## B. Defendant Suarez is not Entitled to Immediate *Giglio* Disclosure

After *Brady*, the United States Supreme Court expanded its disclosure rule to include evidence that may be used to discredit the testimony of critical government witnesses reasonably likely to change the jury's judgment.  *Giglio v. United States*, 405 U.S. 150, 154 (1972); *see Starusko*, 729 F.2d at 260; *Higgs*, 713 F.2d at 43.  *Giglio* impeachment material typically includes cross-examination materials such as immunity agreements, plea

agreements, money paid to a witness, and criminal convictions.
The United States is aware of its obligation to disclose, at the
appropriate time, information bearing directly on the credibility
of its witnesses.  The demand for pretrial let alone immediate
disclosure of such impeachment materials, however, is contrary to
established law in this Circuit.  In *Higgs*, the United States
Court of Appeals for the Third Circuit held that disclosure of
witness-credibility evidence at the time of trial is more than
satisfactory. *Id.* at 44.  In *Higgs*, the Third Circuit held that
the trial court abused its discretion in ordering impeachment
material disclosed a week before trial.  In so holding, the Third
Circuit observed that the purpose of requiring disclosure of
impeachment information was not to assist the defense in general
pretrial investigation, but only to give the defense an
opportunity to effectively cross-examine government witnesses at
trial.  713 F.2d at 44-45.  Naturally, with such purpose in mind,
there should be no need for pre-trial disclosure of *Giglio*
material as a general matter.  *United States v. Eisenberg*, 773 F.
Supp. 662, 685 (D.N.J. 1991) (following *Higgs*).

Consistent with this view, federal courts, including trial
courts in this district, have routinely refused to order pretrial
production of *Giglio* materials.  *See, e.g., United States v.
Martino*, 648 F.2d 367, 384 (5th Cir. 1981) (en banc) (evidence
concerning competency of key government witness provided at time
he testified); *United States v. Rinn*, 586 F.2d 113, 119 (9th Cir.

1978),; *United States v. Giampa*, 904 F. Supp. 235, 281-281
(D.N.J. 1995); *United States v. Eisenberg*, 773 F. Supp. 662, 685
(D.N.J. 1991) (production the day before witness testifies);
*United States v. Litman*, 547 F. Supp. 645, 652-53 (W.D. Pa.
1982); *United States v. Frumento*, 405 F. Supp. 23, 32 (E.D. Pa.
1975) (refusing to order pretrial discovery of criminal records).

The United States recognizes the interest of the Court and
all parties to conduct the trial efficiently and without
interruptions, but the request for immediate production of
impeachment materials is unreasonable and without legal support.
As the Court is aware, the Government has previously produced
*Giglio* material relating to the confidential witness in the
matter of *United States v. Leona Beldini,* Criminal Number 09-637
(JLL), and *United States v. Daniel Van Pelt*, Criminal Number 09-
912 (JAP).  This material was produced substantially before trial
in a timely manner in both these cases thus resulting in no
unnecessary trial delay.  The United States will once again
voluntarily disclose all *Giglio* material in its possession weeks
in advance of trial to ensure that no delay will occur.  This
disclosure will afford defense counsel more than adequate
opportunity to prepare for cross-examination without delaying the
trial.  Thus, while defendant Suarez's motion is premature as of
the submission of this brief, it will likely be largely moot
should the Court conduct oral argument on these motions.

Accordingly, defendant Suarez's motion for early disclosure
of *Giglio* material should be denied.

**Point 5**

<u>THE GOVERNMENT DOES NOT OBJECT TO DEFENDANT SUAREZ'S MOTION
SEEKING TO PRESERVE THE ABILITY TO REQUEST A *STARKS* HEARING
AT A LATER DATE</u>

Defendant requests the right to seek a hearing regarding the audibility of certain tapes pursuant to *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), at some later date.  As defense notes that they have not had the ability to review all of the recordings, the Government does not object to the defendant's request to renew this motion if it deems appropriate at some later date.

## DEFENDANTS SHOULD BE ORDERED TO
## PROVIDE RECIPROCAL DISCOVERY TO
## THE UNITED STATES

In the discovery letters provided to defendants, the United States sought reciprocal discovery from the defendants.  The right of the United States to reciprocal discovery from the defendant is firmly established in Rule 16(b)(1)(A), (B) and © of the Federal Rules of Criminal Procedure.  Subsection (b)(1)(A) allows the United States, upon compliance with a legitimate request by a defendant for similar material, to

> inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial.

Subsection (b)(1)(B) mandates reciprocal discovery of scientific tests.  Under the clear language of this rule, courts uniformly have allowed reciprocal discovery. *See, e.g., United States v. Bump*, 605 F.2d 548, 551-52 (10th Cir. 1979)(requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); *United States v. Sherman*, 426 F.Supp. 85, 93 (S.D.N.Y. 1976).

To date, the United States has not received any reciprocal discovery from the defendants since providing discovery.  Because discovery has been made available to the defendants, the United States is entitled, *pre-trial*, to reciprocal discovery under Rule 16(b), and the Court should so direct disclosure of discoverable information forthwith.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendants' motions and grant the cross-motion of the United States for reciprocal discovery.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

/s/Mark J. McCarren

By: Mark J. McCarren
Assistant U.S. Attorney

Date: July 7, 2010
       Newark, New Jersey