CRITCHLEY, KINUM & VAZQUEZ, LLC
ATTORNEYS AT LAW
75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068

MICHAEL CRITCHLEY
MICHAEL CRITCHLEY, JR.
CHRISTOPHER W. KINUM
JOHN MICHAEL VAZQUEZ

EDMUND DENOIA

(973) 422-9200

Fax: (973) 422-9700
web site: www.critchleylaw.com

July 20, 2010

By electronic filing and by hand delivery

Hon. Jose L. Linares, U.S.D.J.
M.L. King, Jr., Fed. Building
Chambers 5054
50 Walnut Street
Newark, NJ 07101-0999

    Re:    United States v. Suarez et al.
              Crim. No. 09-932 (JLL)

Dear Judge Linares:

Kindly accept this letter brief, in lieu of a more formal brief, as defendant Anthony Suarez's reply to the Government's opposition brief to the pretrial motions in the above matter. As to Mr. Suarez, the Government argues against a severance pursuant to Fed.R.Crim.P. 8(b) or 14, argues against a redaction to the indictment, resists current production of Brady or Giglio material, and requests reciprocal discovery. Each will be addressed in turn.

### Severance Pursuant to Rule 8(b) of the Fed.R.Crim.P.

At pages 16 to 21, the Government claims that Mr. Suarez's case should not be severed from that of his co-defendant, Vincent Tabbachino. In formulating its argument, the Government cleverly intertwines Rule 8(b) with Rule 14 without ever addressing the legal standard set forth in Rule 8(b). However, Rule 8(b) and Rule 14 are not only separate rules, they carry distinct legal standards and provide the Court with different authority as to the appropriate remedies. Rule 8(b) looks to whether there is a transactional nexus among the charges and, if not, severance of the defendants is mandatory.[1] By comparison, Rule 14 reviews whether there is a more general prejudice to the parties and, if so, permits the trial judge latitude in fashioning the appropriate remedy. It is apparent why the Government strategically attempted to meld the

---

[1] The Government is clearly aware of the standard governing 8(b). First, in his initial brief, Mr. Suarez addresses it at length. Moreover, the Government itself refers to is when addressing Mr. Tabbachino's claims for severance. As to Mr. Tabbachino, the Government acknowledges differences in the legal standards between Rule 8(a) and 8(b) at page 22 of its opposition brief, noting that Rule 8(a) is more permissive.

Hon. Jose L. Linares, U.S.D.J.
July 20, 2010
Page 2

two rules – the prosecution realizes that Mr. Tabbachino's case must be severed from Mr. Suarez's under Rule 8(b).

When an indictment names more than one defendant, Rule 8(b) rather than Rule 8(a) is used. United States v. Irizzary, 341 F.3d 273, 287 (3d Cir. 2003), cert denied, 540 U.S. 1140 (2004). The standard set forth in the rule, that is the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offense," requires a transactional nexus. Id. at 287 n.4. The transactional nexus means that there must be one overlapping conspiracy or one common plan or one common scheme. See, e.g., United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1985), cert. denied, 475 U.S. 1021 (1986).

The Government attempt to overcome this standard with two arguments. Neither have merit. First, the Government argues that the conspiracy charge in the indictment provides the "common link" necessary under Rule 8(b). Opposit. Br. at 17. See also Opposit. Br. at 19 ("[T]he conduct of defendant Suarez and Tabbachino are inextricably intertwined as pertains to the corruption counts) (emphasis added). Yet, the conspiracy charge in the corrupt payment counts is not at issue. Instead, this matter turns on the overarching conspiracy or common scheme between the corrupt payment counts (involving Suarez and Tabbachino), on the one hand, and the money laundering counts (involving only Tabbachino), on the other. On this point, the transactional nexus between the corrupt payment counts and the money laundering counts, the Government's brief offers no evidence to link the two as part of one common plan or scheme.

The Government also asserts that Mr. Suarez and Mr. Tabbachino should be tried together because the evidence against each "overlaps in large degree." Opposit. Br. at 16. Again, the overlapping evidence in the corrupt payments allegations is not the issue. Instead, the question is whether there is overlapping evidence in the money laundering case when compared to the corrupt payment counts. On this inquiry, the Government candidly admits that there is no overlap: "Indeed, there will be little question that defendant Suarez had no involvement in the money laundering conduct[.]" Opposit. Br. at 20. In fact, the Government acknowledges that the corrupt payment allegations and the money laundering counts present "two distinct alleged courses of criminal conduct." Opposit. Br. at 23. Thus, by the Government's own admission, the two sets of charges are distinct and Mr. Suarez had no involvement in the money laundering counts.

Yet, even if there were overlapping evidence between the corrupt payment allegations and the money laundering counts, overlapping evidence is not the standard used in reviewing Rule 8(b). See Velasquez, 772 F.2d at 1353. Instead, there must be an overarching scheme, plan or conspiracy between the two sets of counts. Here there is none. Even the Government admits that there is a "seeming lack of surface connection between the corruption and money laundering counts." Opposit. Br. at 24. Not only is there no connection on the "surface" of the indictment, there is also no connection upon a deeper review of the facts and evidence. In any event, it is the four corners of the indictment (with certain limited exceptions) that controls in determining whether there is an appropriate connection under Rule 8(b). United States v. Chavis, 296 F.3d

Hon. Jose L. Linares, U.S.D.J.
July 20, 2010
Page 3

450, 456-57 (6th Cir. 2002). Thus, a lack of connection on the face of the indictment as to the corrupt payment and money laundering counts is dispositive.

The Government also misstates the remedy for a Rule 8(b) violation, arguing that "logic" dictates a severance of the counts, not defendants. Opposit. Br. at 20. However, if there is an improper joinder under 8(b), then the defendants, rather than the counts, must be severed as a matter of law. See United States v. Eufrasio, 935 F.2d 553, 567 (3rd Cir.) (citing 1 C. Wright, Federal Practice and Procedure, § 144 (2d ed. 1982)), cert. denied sub nom., Iodone v. United States, 502 U.S. 925 (1991). The law does not provide for a discretionary severance of counts rather than the defendants.

For the foregoing reasons, Mr. Suarez should be severed from Mr. Tabbachino pursuant to Rule 8(b).

**Severance Pursuant to Rule 14 of the Fed.R.Crim.P.**

The Court is given much greater flexibility in fashioning a remedy under Rule 14, when compared to Rule 8(b), if it finds inappropriate prejudice. The potential recourse runs the gamut from severing the defendants to severing charges to providing cautionary jury instructions. Yet, in light of the Government's opposition, it is clear that the only appropriate remedy is severing Mr. Suarez and Mr. Tabbachino.

First, Mr. Suarez would be improperly prejudiced if he was present during the trial on the money laundering counts, which only pertain to Mr. Tabbachino. As reviewed in Mr. Suarez's initial brief, the Velasquez case discusses the concerns for improper prejudicial spillover when the evidence on certain counts is stronger than that on others. Here, the evidence of the money laundering is stronger. Thus, if the jury were to conclude that Mr. Tabbachino was guilty of the money laundering, they could also improperly draw the inference of Mr. Suarez's guilt for associating with Mr. Tabbachino in the corrupt payment allegation. Mr. Tabbachino is alleged to have introduced Mr. Suarez to the Solomon Dwek, the cooperating witness. This is but one example of improper prejudicial spillover. Moreover, the risk of jury confusion is also great because although the money laundering and corrupt payments allegations are separate and distinct, they both involve Dwek and Tabbachino during much of the same time period.

Moreover, a severance of the charges would not be sufficient to cure the prejudice. During his initial brief, Mr. Suarez expressed concerns with such a result because he anticipated that the Government would nevertheless attempt to introduce money laundering evidence as to Mr. Tabbachino under Rule 404(b) of the Federal Rules of Evidence. In response, the Government speculates that Mr. Suarez's concerns "[i]nadvertantly undermines" Mr. Tabbachino's arguments. Opposit. Br. at 23. Yet, Mr. Suarez's assertion was neither inadvertent nor meant to undermine Mr. Tabbachino. Instead, it was a measured deduction based on experience with the Government – the prosecution will usually attempt get information into evidence through one door when another has been closed.

Hon. Jose L. Linares, U.S.D.J.
July 20, 2010
Page 4

To this end, the Government's frank admission in its opposition is greatly appreciated. The Government clearly states that it does intend to introduce evidence of the money laundering scheme against Mr. Tabbachino in the corrupt payment case, pursuant to Rule 404(b), if the money laundering counts are severed. Opposit. Br. at 23-24. Thus, pursuant to the Government's own acknowledgement, if the counts are severed, it will nonetheless attempt to introduce the same prejudicial evidence that required the severance in the first instance. Accordingly, severance of the charges will not suffice. Instead, severance of the parties is the only reasonable solution.

Accordingly, Rule 14 provides an additional basis for the severance of Mr. Suarez from Mr. Tabbachino.

**Striking Surplusage from the Indictment**

The Government also submits that Mr. Suarez's motion to strike surplusage from the indictment should be denied. Opposit. Br. at 26-30. In doing so, the Government implicitly acknowledges that it has gone beyond the essential elements of the claim in filing its speaking indictment. Opposit. Br. at 28 (citing United States v. Yeaman, 987 F. Supp. 373, 376-77 (E.D.Pa. 1997)). The Government also argues that the indictment need not be redacted since it is merely a charging document and no presumption attaches to it. Opposit. Br. at 29. Of course, such an argument begs the question: if it has no evidential value, then why not change it from its current form, that is, one of an advocacy piece? The answer is simple: the Government knows that the speaking indictment gives it an unfair advantage and it is loath to relinquish this advantage. The grand jury does not author the indictment. Instead, it is drafted and finalized by prosecutors who alone decide what information to include (and in the case, which exculpatory information to omit).

The Government also argues that Mr. Suarez's analysis of the offending language is "cursory at best." Opposit. Br. at 29. While disagreeing with this assessment, Mr. Suarez offers the following points:

1. From the outset, the conversations referred to in the indictment are comprised of hours of tape. Thus, the snippets asserted are taken out-of-context from the overall conversations;

2. Pages 3 to 4 of Mr. Suarez's brief reveal critical, exculpatory information from taped conversations that reveal that the facts alleged in the indictment are taken out-of-context;

3. Specific examples in the indictment of statements being taken out-of-context are as follows:

    - Par. 7(a) – critically the indictment omits that Mr. Tabbachino indicated that purchasing the tickets was not part of a corrupt payment as he had not said "anything yet" to Mr. Suarez concerning Dwek's true intentions;

- Par. 7(b) – refers to a conversation in Mr. Suarez's "presence," but at a key point, Mr. Suarez takes a phone call, at which point Dwek informs Mr. Tabbachino about having ten thousand cash and Mr. Tabbachino talks about providing a check to Mr. Suarez. The (mis)impression given by the indictment is that Mr. Suarez was privy to this conversation;

- Throughout paragraph 7, the indictment constantly refers to Dwek asking Mr. Suarez with "expediting approvals." Obviously, the government is going to argue that this was the improper request that Dwek was making to Mr. Suarez. Conspicuously absent, however, is that Dwek had informed Mr. Suarez that he had not even purchased the property in question. In fact, he had not even spoken to the owners of the property (who were private entities; the property was not owned by Ridgefield). Thus, there was nothing to expedite. Moreover, the indictment also omits that Dwek also used a cover story as to why he wanted to meet with the Mayor before he bought the property. His cover story was that he had taken a huge financial hit when he brought property in the Oranges years before and the local government tried to shake him down. Thus, a premise of Dwek's meeting with Mr. Suarez was that he did not want to be subject to corrupt local government. This fact is completely omitted from the indictment although it is repeated throughout the conversations;

- Par. 7(e) – the indictment refers to Mr. Suarez informing Dwek that he (Suarez) does everything on the merits with no preferential treatment. Yet, the indictment completely neglects Dwek's consistent reply, which, in sum and substance, is an attempt by Dwek to cut off Suarez and say that they need to help each other. Dwek's attempts to infect the conversations with ill intent are even more egregious in light of the indictment at Par. 7(b), which states that Dwek claimed that if Mr. Suarez did not want the money, he did not have to take it. The use of such language is a blatant attempt to bolster Dwek's credibility so that the Government can argue that Dwek was not forcing anything on anyone. Yet, the omitted portions of Dwek's responses to Mr. Suarez reflect just the opposite.

- Par. 7(g) – the indictment refers to a call between Dwek and Mr. Tabbachino. Yet, the indictment completely ignores that fact that both agreed to meet in the future with Mr. Suarez but the meeting never occurred.

The foregoing are but a few examples of why the indictment is misleading and replete with statements taken out-of-context. To cover each and every one would result in an reply brief longer than the initial brief. However, the flavor of the indictment's improper bias towards the Government is clearly shown by the foregoing.

Finally, in its opposition brief, the Government completely ignores the alternate remedy proposed by Suarez. Instead of actually redacting the indictment, the Court could instead choose to not read the indictment to the jury, not send the indictment in with the jury for deliberation, and could instead choose to read a summary of the charges to the jury. This practice occurred in both the Hedgepeth and Prejean cases, which Mr. Suarez discussed in his initial brief. For all

Hon. Jose L. Linares, U.S.D.J.
July 20, 2010
Page 6

intents and purposes, such a procedure would obviate the harm cause by the speaking indictment in this case.

### The Government's Production of Brady and Giglio Materials

The Government also resists requests for current production pursuant to Brady and Giglio. Yet, the Government notes that this point may be moot by the time oral argument takes place on these motions. Opposit. Br. at 34. Counsel interprets this statement to mean that the Government intends to make such information available by then. If that is the case, we have no objection. If, however, the Government intends to delay the production beyond that date, we respectfully request an opportunity to be heard. We understand that the materials are voluminous, constituting numerous banker's boxes of documents. Trial is currently scheduled to begin soon after Labor Day. Mr. Suarez needs the materials immediately to have time to adequately review them, much less effectively use them, for trial.

### Mr. Suarez's Discovery to the Government

Mr. Suarez's counsel respectfully reads Rule 16 to trigger his disclosure obligations once the Government has completely fulfilled its obligations. See Fed.R.Crim.P. 16(b)(1)(A). Obviously, given Mr. Suarez's motion for additional discovery, counsel was not of the position that the Government had been fully compliant. However, given the Government's representation that it has complied with Rule 16, counsel will produce such information to the Government. In doing so, counsel reserves all of its rights and remedies as to discovery due from the Government.

                                    Respectfully submitted,

                                    Critchley, Kinum & Vazquez
                                    Attorneys for Anthony Suarez

By: _____
     Michael Critchley, Esq.

By: _____
     John Michael Vazquez, Esq.

cc:    Mark McCarren, A.U.S.A.
       Anthony Kress, Esq.
       Anthony Suarez